Horace TUSETH, et al., Appellants,

v.

THORESON, INC., Respondent.

Nos. 49155, 49302.

Supreme Court of Minnesota.

Dec. 21, 1979.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson II, and J. Richard Bland, Minneapolis, for appellants.

Richard D. Allen, Minneapolis, for respondent.

Heard before OTIS, ROGOSHESKE, and SCOTT, JJ., and considered and decided by the court en banc.

OTIS, Justice.

Plaintiff Horace Tuseth was involved in a single vehicle accident on Minnesota Highway Nine, near Crookston, which was then being resurfaced by defendant Thoreson, Inc. Plaintiff was the driver and sole occupant of a pickup truck that left the road while negotiating a level, gradual curve. He alleged that defendant left the road in an unsafe condition and failed to provide adequate warning of the danger. The jury found plaintiff's negligence to be the sole cause of the accident. The trial court twice denied motions for a new trial. We affirm.

This accident occurred in the evening hours of September 22, 1975, plaintiff's fiftieth birthday. The night was clear and the road was dry. Plaintiff was southbound, travelling from Crookston toward Beltrami. Having traversed the highway almost every day to and from work, he knew the road well and was aware that it was being resurfaced. The pickup left the highway during a gradual south to east curve and rolled into a ditch. Plaintiff suffered severe spinal injuries.

The condition of the roadway was a matter of some dispute. Defendant's records showed that, contrary to contract specifications that each day the new paving was to end in the same place in each lane, on the day of the accident paving had been completed in the northbound lane nearly one-half mile farther than in the southbound lane. At the accident site the northbound lane had already received a new one and one-half inch layer of asphalt, but the parties disputed whether plaintiff had yet encountered new blacktop in the southbound lane. Where the new surface had not yet been applied, the highway was covered with a light coat of tack, an oily, black substance that is applied prior to resurfacing. This tack partially obscured the highway marking lines. There were no special cones, signs, or lights near the accident site, but plaintiff had encountered a "Road Construction Ahead" sign before entering the area.

A highway patrolman dispatched to the scene found plaintiff on his back, his lower torso inside the overturned pickup. The officer detected the odor of alcohol on plaintiff's breath and noticed a slurring of his speech. In response to a question about

drinking, plaintiff replied that he had celebrated his birthday at a bar and at a 3.2 beer tavern in Crookston. A partially consumed half-pint of vodka was found in the cab of the pickup. At trial another witness testified that he had observed plaintiff drinking from a liquor bottle while at work that afternoon. Later, with plaintiff's consent, blood samples were taken at the Crookston hospital. Analysis of these samples indicated that plaintiff's blood contained 0.20 percent ethyl alcohol.

■ 1. Plaintiff contends that the trial court unfairly prejudiced him by admitting without expert interpretation the results of the blood analysis. He urges that this evidence should have been inadmissible without expert testimony as to the physical effects of such an alcohol level on a man of plaintiff's characteristics. He also argues that the error was compounded by portions of the jury charge relating to that evidence.

In testimony admitted at trial two experts from the Minnesota Bureau of Criminal Apprehension, a chemist and a toxicologist, described the procedures followed in performing gas chromatograph tests on the blood samples and stated that the tests yielded a result of 0.20 percent ethyl alcohol. The toxicologist also testified that a person of plaintiff's characteristics would have to have consumed at least eight fluid ounces of one hundred proof alcohol to produce such a result.

After the conclusion of testimony the trial court instructed the jury that it is unlawful to operate a motor vehicle in this state when the operator's blood contains 0.10 percent or more by weight of alcohol. He further told them that a violation of that provision constituted prima facie evidence of negligence.

There was no error. Minn.Stat. ch. 169 (1978) assigns an evidentiary significance to blood alcohol test results of 0.10 or greater. Minn.Stat. § 169.121, subd. 1(d) (1978) provides that it is unlawful to operate a motor vehicle "[w]hen the person's alcohol concentration is 0.10 or more." Minn.Stat. § 169.96 (1978) then provides that any violation of chapter 169 constitutes prima facie evidence of negligence.[1] The admission of the 0.20 percent result of the blood analysis, therefore, was relevant, indeed necessary, to establish a violation of § 169.121, subd. 1(d), and to thereby obtain the benefit of the prima facie evidence provision of § 169.96. No expert interpretation is necessary for the admission of a test result of 0.10 or greater. The admission of such evidence and the instructions with regard thereto are sanctioned by statute and were wholly proper.

■ 2. Plaintiff also contends that a new trial should have been granted pursuant to Minn.R.Civ.P. 59.01(4) on the ground of newly discovered evidence. At trial plaintiff testified that following the accident, while immobile and lying on his back, he swallowed some gasoline that had dripped from the truck's gasoline tank. Following trial plaintiff's attorneys obtained the affidavit of an expert, an organic chemist, who testified that the gas chromatograph test results may have been unreliable if gasoline had entered plaintiff's bloodstream. The trial court cited several justifications for denying plaintiff's motion for a new trial.

We agree with the trial court that these facts call for the application of the general rule that expert testimony does not constitute newly discovered evidence that would justify a new trial. *Clark v. Banner Grain Co.,* 195 Minn. 44, 53, 261 N.W. 596, 602 (1935). *See also Swanson v. Williams,* 303 Minn. 433, 436, 228 N.W.2d 860, 862–63 (1975). There was no abuse of discretion.

Plaintiff raises other issues that we do not find necessary to discuss.

Affirmed.

TODD, J., took no part in the consideration or decision of this case.

---

1. Minn.Stat. § 169.96 (1978) provides in part:

In all civil actions, a violation of any of the provisions of this chapter, by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence only.