**Harry KOZAK, Appellant,**

v.

**John N. WEIS, Respondent.**

**No. C7–83–1970.**

Court of Appeals of Minnesota.

May 15, 1984.

 

Thomas W. Lies, St. Cloud, for appellant.

William F. Kolbinger, Big Lake, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER, and LANSING, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This is an appeal of an order denying appellant Kozak's motion for amended findings or a new trial. Appellant brought suit to establish the boundary line between his property and respondent's and for damages

for trees respondent cut on the disputed strip of land. Appellant based his claim on a remonumentation survey, conducted by Sherburne County, which suggested the fences marking the boundary were misplaced. At trial, however, the county surveyor testified that no formal boundary line between the properties was drawn. At the close of appellant's case-in-chief, the trial court directed the verdict based on the failure to establish the boundary line. Appellant's motion for amended findings or a new trial was denied and this appeal followed. We affirm.

## FACTS

Appellant and respondent own adjoining tracts of farm land in Section 30, Township 35, Sherburne County. Sometime between 1963 and 1967, respondent's father and appellant built a fence. Respondent purchased the property from his parents in August of 1973. Appellant maintains there was no discussion about building the fence on the property line. He stated he never treated the fence as the border of his property and that he told respondent's father he was dissatisfied with the location of the fence. Respondent does not know why the fence was placed where it is.

In the early 1970's, the Sherburne County surveyor's office conducted several remonumentation projects. As part of one of these projects, the Kozak and Weis properties were surveyed. The results of the survey were compared to the original government survey and other surveys performed by the county. The remonumentation report that resulted established a quarter corner for Section 30. Respondent objected to the location of the quarter corner so the land was surveyed a second time. A second report entitled A Report concerning the Quarter Corner common to Section 19 and 30, Township 35, Range 29, Sherburne County, Minnesota was filed and copies were sent to the property owners. One of the conclusions enunciated in the report was:

VI. The resulting North-South quarter line of Section 19 and 30 and their relationship with certain fences are shown in Exhibit K and L.

a. The resulting North-South quarter line of Section 19 calculates to be 19 feet, more or less, West of the existing fence corner near the center of said Section 19. Joe Weis testified that Nickerson surveyed in Section 19 in about 1940 (See Exhibit F). He later testified again as to this survey, and upon questioning I found out that in said survey Nickerson never ran a line down to or otherwise used the South quarter corner (See B–2, paragraph 17). From this I can only conclude that Nickersons "survey" consisted of "plat" measurements "run in" and "hung" without benefit of the proper running of lines as per BLM or GLO rules.

b. The resulting North-South quarter line of Section 30 does not fit any of the fences very well. The fences generally bear Easterly as they go Southerly from the restored North quarter corner. It is interesting to note that the Westerly of these fences lies an average of 8.7 feet East of the resulting North-South quarter line.

Report at 28.

Shortly after issuance of the report, appellant filed suit to establish title in accordance with the report. The report was admitted into evidence during the testimony of John Oliver, Sherburne County surveyor. Oliver also testified that a random line had been run along the north-south property line of the Kozak and Weis properties. A random line is simply a line of convenience drawn from points where the surveyors encounter the clearest line of sight. No formal line was drawn. Oliver stated that the purpose of remonumentation is to reestablish the corner posts placed by the original government surveyors. He acknowledged that establishing the boundary line in this case would have required a survey by an independent licensed surveyor. Appellant had not employed an independent surveyor and offered no other evidence of the proper boundary line.

Respondent moved for a directed verdict at the close of appellant's case-in-chief. Appellant's counsel relied on the county surveyor's report in opposing the motion. He also made an oral motion for a new trial. The trial court directed the verdict and denied the motion for new trial. The trial court also denied a subsequent written motion for amended findings or a new trial.

### ISSUES

1. Whether the trial court erred in directing a verdict at the close of appellant's case-in-chief?

2. Whether the trial court abused its discretion in denying appellant's motion for a new trial?

### ANALYSIS

■ 1. The issue with respect to the directed verdict is two-fold. First, whether it was proper to direct a verdict under the circumstances of this case. Second, whether the trial court abused its discretion by directing a verdict rather than dismissing the action without prejudice.

A. *Propriety of directing the verdict.*

A motion for a directed verdict presents a question of law regarding the sufficiency of the evidence to raise a fact question for the jury's decision. For purposes of the motion, the trial court must consider the record as a whole and treat as credible the evidence for the adverse party and all inferences which may reasonably be drawn from that evidence.

The standard to be used in determining whether a verdict should be directed by the trial court, while often worded in different ways, is essentially whether different persons could reasonably come to different conclusions after viewing the evidence as a whole in the light most favorable to the nonmoving party.

We have held that the test to be applied in determining whether a verdict should be directed by the trial court is whether it is plain from the evidence submitted that all men can draw but one conclusion.

*Wohlfeil v. Murray Machinery, Inc.*, 344 N.W.2d 869, 872-73 (Minn.App.1984) (citations omitted).

The only evidence appellant submitted to establish the boundary line was the county surveyor's report. The report states that the fence constructed by Weis and Kozak does not fit the north-south quarter line very well. Specifically, the report notes that the westerly fence, the fence at issue, lies an average of 8.7 feet east of the north-south quarter line. Appellant claims that this evidence is sufficient to prove his case and create a jury question.

In *Dittrich v. Ubl*, 216 Minn. 396, 13 N.W.2d 384 (1944), the court said:

> The difficulty with plaintiff's attempt to prove trespass against defendant is that it is necessary for him to rely upon a resurvey made in 1941, four years after the conveyance in question. A resurvey that changes lines and distances and purports to correct inaccuracies or mistakes in the old plat is not competent evidence of the true line fixed by the original plat.... "... A resurvey must agree with the old survey and plat to be of any use in determining it." ... Resurveys for the lawful purpose of determining the lines of an old survey and plat are generally very unreliable as evidence of the true lines.

*Id.* at 405, 13 N.W.2d at 389-90.

County surveyor Oliver testified that he believed the remonumentation reestablished the original locations of the monuments. He stated, however, that it was not his function to establish boundary lines. Appellant introduced neither the deed to his property nor the record of the original survey. Even if the remonumentation survey follows the corners and lines originally established by the government survey, there is no evidence of the boundary line of appellant's property. As such, the trial court properly determined there was insufficient evidence to raise a fact question for the jury.

B. *Directed verdict v. dismissal.*

■ Rule 50.01 of the Minnesota Rules of Civil Procedure states:

A motion for a directed verdict may be made at the close of the evidence offered by an opponent or at the close of all the evidence. A party who moves for a directed verdict at the close of the evidence offered by an opponent shall, after denial of the motion, have the right to offer evidence as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. If the evidence is sufficient to sustain a verdict for the opponent, the motion shall not be granted. The order of the court granting the motion for a directed verdict is effective without any assent of the jury.

Appellant claims the trial court abused its discretion by directing a verdict under Rule 50.01. Appellant maintains that a proper ruling would have been dismissal of his cause of action without prejudice under Rule 41.02 of the Minnesota Rules of Civil Procedure. In support of his claim, appellant cites *Usher v. Allstate Insurance Co.,* 300 Minn. 52, 218 N.W.2d 201 (1974). In *Usher* the court said:

> The trial court's authority to direct a verdict is to be exercised cautiously and sparingly. Caution is especially required where the motion is made upon the ground of failure of proof at the close of plaintiff's case in chief rather than at the close of all the evidence.... Although [a dismissal under 41.02(2) is] tested by the same standards as a motion for a directed verdict under Rule 50.01, it is nevertheless a more apt motion for raising the issue of want of proof at the close of plaintiff's case in chief. This is so because a Rule 41.02(2) motion authorizes a dismissal without prejudice.

*Id.* at 57, 218 N.W.2d at 205.

In *Paradise v. City of Minneapolis,* 297 N.W.2d 152 (Minn.1980), however, the court reviewed a dismissal at the close of plaintiff's case and said:

> The trial court's dismissal of plaintiff's complaint under Minn.R.Civ.P. 41.02(2) is equivalent to a directed verdict as embodied in Minn.R.Civ.P. 50.01.

*Id.* at 155. Thus, the distinction between a dismissal and a directed verdict may no longer be valid. In any event, Rule 50.01 specifically permits the directing of a verdict at the close of an opponent's case. The trial court chose to direct the verdict rather than dismiss appellant's complaint. Such action was permissible under the rules and was not an abuse of discretion.

■ 2. Appellant claims he was surprised by surveyor Oliver's testimony that no formal boundary line was ever drawn. Subsequent to entry of the directed verdict, he retained a private surveyor who surveyed the property and drew the boundary line at issue. Appellant maintains that the trial court erred in denying his motion for a new trial based on the surprise and newly discovered evidence.

In *Swanson v. Williams,* 303 Minn. 433, 228 N.W.2d 860 (Minn.1975) the court reviewed claims of surprise and newly discovered evidence. The court's analysis is equally applicable to the instant case. With respect to the claim of surprise, the court said:

> Knowledge of what testimony will or will not be precludes surprise. No claim of surprise or request for continuance was made at the time the testimony was given. The trial court acted well within its discretion in denying plaintiff's motion for a new trial on the ground of surprise.

*Id.* at 435, 228 N.W.2d at 862 (citations omitted).

Appellant's counsel called surveyor Oliver as a witness. Counsel had also participated in deposing Oliver. This was more than adequate opportunity to determine the substance of Oliver's testimony. When Oliver testified that no boundary line was drawn, no request for a continuance was made nor was a claim of surprise registered.

■ Moving to the claim of newly discovered evidence, the *Swanson* court said:

[g]enerally, to be "newly discovered evidence" within the meaning of Rule 60.-02(2) evidence must have been in existence at the time of trial but not known to the party at that time. This would not include expert testimony procured following trial.

*Id.* at 436, 228 N.W.2d at 862. The exercise of the same diligence prior to trial may have produced a competent survey and established the boundary line. Contact of the expert, surveying of the land, and establishment of the reputed boundary, however, were all accomplished after trial. As such, the evidence was not newly discovered and the trial court did not err in denying appellant's motion for a new trial.

### DECISION

The trial court's order of September 9, 1983 denying appellant's motion for amended findings or a new trial is affirmed in all respects.

Affirmed.